IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MIKE MILLER, | ) | Civil No. 07-3088-CL |
| Plaintiff, | ) | **OPINION AND ORDER** |
| v. | ) | |
| AQUA GLASS, INC., | ) | |
| Defendant. | ) | |

**PANNER, Judge.**

On December 10, 2007, Defendant filed with the Clerk of this court Notices of Removal in <u>Miller v. Aqua Glass, Inc.</u>, and <u>Hamerick v. Aqua Glass, Inc.</u>  Defendant then moved to compel arbitration in those actions.  The matter was fully briefed.  On February 20, 2008, Magistrate Judge Clarke filed his Report and Recommendation (R&R), which recommended granting the motions to arbitrate.  Plaintiffs timely objected.

On March 26, 2008, Plaintiff moved to remand <u>Miller</u> to state court, asserting the matter was not properly removed from state court.  Judge Clarke referred that motion to me, to consider along with Plaintiffs' objections to the R&R.  I review these matters *de novo* pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

1 - OPINION AND ORDER

**A.    The Motion to Remand in *Miller***

Both parties believed these matters were duly removed from state court in December 2007.  Notices of Removal were filed with the federal court and served on the plaintiffs.  The state court has acknowledged receiving notice of the removal in Hamerick.

On March 6, 2008, the Klamath County Circuit Court informed Plaintiff Miller that his state court action would be dismissed for want of prosecution.  In response to Plaintiff's inquiry, the Clerk of the Klamath County Circuit Court advised Plaintiff that "[n]othing has been filed in this matter . . . regarding removal of this action to the United States District Court."

Plaintiff then moved to remand Miller to state court. Defendant objected on several grounds, including expiration of the 30 day period for moving "to remand the case on the basis of any defect other than lack of subject matter jurisdiction . . . ."  28 U.S.C. § 1447(c).

The dispositive question is whether a failure to notify the state court that the matter has been removed constitutes a mere procedural defect--which is subject to the 30-day limitation in § 1447(c)--or if it constitutes a jurisdictional defect that may be raised at any time.  I conclude it is a procedural defect.

"[R]emoval is effected by the defendant taking three procedural steps: filing a notice of removal in the federal court, filing a copy of this notice in the state court, and giving prompt written notice to all adverse parties."  14C Wright, Miller, & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3737. / / / /

2 - OPINION AND ORDER

The Notice of Removal was timely filed in federal court. It recites facts that, if true, are sufficient to establish subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), § 28 U.S.C. § 1367 (supplemental jurisdiction), and possibly under 28 U.S.C. § 1332(a) (diversity). Defendant promptly gave notice of the removal to all adverse parties. What remained to be done was to divest the state court of jurisdiction, by giving notice to the state court that the matter had been removed. This step allegedly was not completed.

There exists a split of authority on whether the federal court obtains jurisdiction immediately upon the filing of the Notice of Removal with the clerk of the federal court, or only after all three steps are completed. Wright & Miller state that "the sounder rule . . . is that removal is not effective until all the steps required by the federal statute have been taken by the defendant." FEDERAL PRACTICE AND PROCEDURE, § 3737.

However, the authors acknowledge, "[t]here also is authority for the reasonable intermediate conclusion that both the state and the federal courts have jurisdiction during the period between the filing of the notice of removal in federal court and the giving of notice to the state court and to all adverse parties." Id. The latter interpretation has been adopted by another commentator. See 16 Moore's Federal Practice - Civil § 107.31[3] ("When a defendant files a notice of removal in federal court and sometime later files the notice in state court, the two courts share concurrent jurisdiction until the notice is filed in state court, which divests the state court of

3 - OPINION AND ORDER

jurisdiction.")  See also Berberian v. Gibney, 514 F.2d 790, 792-93 (1st Cir. 1975) ("we are inclined to agree with Professor Moore, that the jurisdiction of the federal court attaches as soon as the petition for removal is filed with it, and that both state and federal courts have jurisdiction until the process of removal is completed"); Holmes v. AC&S, Inc., 388 F. Supp. 2d 663, 667 (E.D. Va. 2004) ("If there is any time period between the filing of the notice of removal in federal court and its filing in state court, concurrent jurisdiction exists"); Davis v. Estate of Harrison, 214 F. Supp. 2d 695, 697-98 (S.D. Miss. 2002) (following Berberian); Tarbell v. Jacobs, 856 F. Supp. 101, 104 (N.D.N.Y. 1994) ("during the short time between the filing of the Notice of Removal in federal court and the filing of a copy in the state court, both courts have concurrent jurisdiction").[1] But cf. Anthony v. Runyon, 76 F.3d 210, 213-14 (8th Cir. 1996) (rejecting concurrent jurisdiction theory, and asserting removal is ineffective until notice is filed with the state court).

Good arguments, and distinguished proponents, may be found on either side of this question.  At some point, Congress may see fit to clarify the statute.  For now, I conclude that the concurrent jurisdiction theory, though not flawless, is more

---

[1]  Two Ninth Circuit decisions, though not directly on point, also imply that the federal court assumes jurisdiction upon the filing of the notice of removal.  See Okot v. Callahan, 788 F.2d 631, 633 (9th Cir. 1986) (removal is accomplished by filing petition for removal with federal court); Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) (same).  Neither opinion suggests that jurisdiction did not immediately vest, but must await some further steps.  The requirement for a "verified petition" and "bond for costs," mentioned in those decisions, has since been eliminated by statute.

consistent with the statutory language and easier to apply in practice.

The first step, filing a Notice of Removal in the federal court, immediately gives the federal court jurisdiction over the action. Were this not the rule, the federal court would receive a Notice of Removal purporting to transfer the matter to federal court, yet not actually possess jurisdiction until subsequent events occurred. It is unclear how the federal court would know when those additional events had occurred and the federal court's jurisdiction formally commenced. This also would imply that a defect at any stage of the removal procedure prevents the removal from ever taking effect. Such is contrary to the generally acknowledged rule that a defective removal is effective, although it may still be susceptible to a motion to remand.

The second step, giving notice of removal to the state court, divests the state court of jurisdiction. Until the state court receives the notice, it retains concurrent jurisdiction with the federal court.

If Defendant Aqua Glass failed to give notice of removal to the state court, then the state and federal courts temporarily exercised concurrent jurisdiction. This did not deprive the federal court of subject matter jurisdiction. Rather, the omitted notice to the state court was a procedural defect, which could not be raised more than 30 days after the action was removed to federal court. See <u>Maniar v. Federal Deposit Ins. Corp.</u>, 979 F.2d 782, 784-85 (9th Cir. 1992). Consequently, Plaintiff Miller's motion to remand was untimely, and is denied.

5 - OPINION AND ORDER

I reject Miller's assertion that the 30 day period did not commence to run until he discovered the procedural defect. Miller's reliance on Stein v. Sprint Communications Co., L.P., 968 F. Supp. 371 (N.D. Ill. 1997), is misplaced. The defect in Stein was lack of subject matter jurisdiction, to which the 30 day rule is inapplicable.

To the extent the state court actually did dismiss the Miller Complaint for failure to prosecute, I now reinstate the Complaint. See Holmes, 388 F. Supp. 2d at 667-70 (in this circumstance, federal court has same authority it would have if state court dismissal order had been issued by the federal court, and may revisit that order); Berberian, 514 F.2d at 793 (similar). Any failure to prosecute the Complaint in state court resulted solely from Defendant's representation that the matter had been duly removed to federal court, where the parties have been actively litigating this matter.

**B.    Motion to Compel Arbitration**

With limited exceptions, federal law permits and even encourages voluntary agreements to arbitrate disputes. "It is 'this voluntariness' that provides the 'bedrock justification' from which arbitration derives its legitimacy as an alternative to the judicial system." LeLouis v. Western Directory Co., 230 F. Supp. 2d 1214, 1219 (D. Or. 2001).

"Voluntary" does not describe the arbitration agreement here. The parties did not negotiate a contract and mutually agree they preferred to arbitrate any claims arising from their relationship. Rather, Aqua Glass unilaterally imposed

6 - OPINION AND ORDER

arbitration as a condition of being employed by the company. The arbitration agreement encompasses not only claims brought by current or former employees, but even claims brought by unsuccessful job applicants.

As in Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 893 (9th Cir. 2002), "[t]he agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms . . . ." In Adams, the Ninth Circuit refused to enforce the arbitration clause, finding it both procedurally and substantively unconscionable.

Under Oregon law, an arbitration agreement is not presumptively void merely because it is part of an adhesion contract. Nevertheless, the circumstances under which the arbitration agreement was formed are relevant. An arbitration clause that might survive if freely negotiated by the parties, may fail if unilaterally imposed by a party with superior bargaining power. Procedural and substantive unconscionability are not entirely separate tests, but part of a single inquiry. See Carey v. Lincoln Loan Co., 203 Or. App. 399, 422 (2005) ("substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable"), *aff'd on unrelated issues*, 342 Or. 530 (2007).[2]

---

[2] In that respect, Oregon law is not unlike California law. Cf. Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007) (California courts "apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the

(continued...)

7 - OPINION AND ORDER

The challenged arbitration agreement contains provisions that unreasonably favor the employer who drafted it.  First, the contract effectively requires arbitration only of claims likely to be brought by an employee or applicant for employment, including:

> any claim under applicable state or federal law an employee within the United States might have against the Company, including, for example, all claims for: wages or other compensation due; breach of any contract; violations of public policy [aka "wrongful discharge claim"]; negligence; intentional torts; any alleged exception to the workers' compensation laws; all forms of unlawful discrimination including, but not limited to, race, color, sex, religion, national origin, disability, marital status or age; denial of fringe benefits; violation of any federal, state, or other governmental law, statute, regulation, or ordinance; and, any other matters arising under common or statutory law.  Disputes covered this policy shall also include any claim an employee might have against any officer, director, employee, or agent of the Company, or any of the Company's subsidiaries, divisions, and affiliates, if that claim in any way arises out of or relates to the employment relationship or the termination of the employment relationship.  It is the intent to submit to mediation and arbitration to the fullest extent permitted by law all disputes an employee might have against the Company and any of its subsidiaries, divisions, affiliates, officers, directors, employees, and agents.

\* \* \*

"The only employee claims not covered by this Policy are those the employee might have for workers' compensation benefits

---

[2](...continued)
conclusion that the term is unenforceable, and vice versa'") (quoting Armendariz v. Found. Health Psychcare Servs. Inc., 6 P.3d 669, 690 (Cal. 2000)).

8 - OPINION AND ORDER

pursued through a state administrative agency, unemployment compensation benefits, and claims under any of the Company's welfare benefit and pension plans."  These exceptions do not represent a concession on the employers' part.  An employer cannot legally compel arbitration of such claims.

At first glance, the arbitration agreement appears to apply equally to claims by employer and employee: "Except as noted below, the disputes covered by this Policy include any claim the Company might have against the employee."  On closer inspection, that mutuality proves illusory.  The exceptions cover the very kinds of claims most likely to be brought by an employer against a current or former employee:

> . . . [E]xempt from this Policy are claims for injunctive or equitable relief the Company might have against an employee to: enforce non-competition agreements; enforce non-solicitation agreements; protect, directly or indirectly, the Company's trade secret(s), proprietary information, confidential information and other Company property; and protect the Company's business reputation.

The net result is that the employer may seek relief in court for the claims that matter most to it, a right denied to the employee.[3]  Cf. LeLouis, 230 F. Supp. 2d at 1220 ("The

---

[3] The arbitration agreement purports to exempt from arbitration claims for "injunctive or equitable relief the Company may have against an employee."  It is unclear whether that would also exempt claims by the Company for damages based on the same events.  Otherwise, one part of the claim would be adjudicated in court, while the other part of the same claim might be decided by an arbitrator.  Alternatively, it could be argued that by seeking injunctive relief in court, the Company waives any claim for damages.  It also is not clear whether an action for declaratory relief, brought by a former employee to determine the rights of the parties or to enjoin the Company from interfering with the

(continued...)

arbitration agreement [defendants] forced upon LeLouis is one-sided.  LeLouis must submit all her claims to arbitration, but defendants are not obligated to arbitrate any claims they have against LeLouis.")

It is not only the forum that differs.  The severe restrictions this arbitration agreement places upon discovery, the shortened limitations period for some claims, the requirement to mediate any dispute first, and the other constraints this arbitration agreement imposes upon the employee, are declared inapplicable to claims of the kind likely to be brought by the employer.  Put another way, the employer is unwilling to have its own claims heard and decided under the same rules that apply to employee claims.

It is no answer that the arbitration agreement compels the employer to arbitrate any claims the employer theoretically might have against the employee for matters such as racial discrimination, unpaid wages, or wrongful discharge.  An employer almost certainly will never have any such claim.  Cf. Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 569 (2007) ("Although the arbitration rider with majestic equality forbids lenders as well as borrowers from bringing class actions, the likelihood of the lender seeking to do so against its own customers is as likely as the rich seeking to sleep under

---

[3](...continued)
former employee's new business, would be heard by a court or arbitrator. Ultimately, litigation might be necessary just to determine what claims may be litigated and where.

10 - OPINION AND ORDER

bridges.")[4]

Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862 (D. Or. 2002), is distinguishable.  That action concerned a mortgage, not an employment contract.  The cited passage also is dictum, since the Torrance court concluded there were other grounds for not enforcing the arbitration clause.  In any event, the dearth of mutuality is not the only one-sided provision in the present arbitration agreement.

The arbitration agreement imposes severe restraints on discovery.  Each side is limited to a single deposition, which must be taken at least thirty days prior to arbitration.  Though appearing to provide for equal treatment, the single deposition rule strongly favors the employer.  In the typical employment case, an employer has less need for depositions.  The employee usually bears the burden of proof.  She may need to probe behind the stated reasons for the challenged employment decision, or establish a pattern of disparate treatment or harassment. Persons with knowledge of the facts often are employees, officers, owners, or otherwise affiliated with the employer.  The employer's attorney can generally question such persons without resorting to depositions.  An employee (or former employee), lacking equivalent access to these individuals and documents, must rely upon subpoenas and depositions.

---

[4]  "The law, in its majestic equality, forbids the rich as well as the poor to sleep under the bridges, to beg in the streets, and to steal bread." Anatole France, Le Lys Rouge, ch. VII (1894).

11 - OPINION AND ORDER

The Magistrate Judge correctly concluded that the discovery restrictions are impermissibly biased in favor of the employer. The Magistrate Judge then attempted to revise the contract for the parties, reasoning that "when a contract contains partly legal and partly illegal terms, the legal parts remain enforceable." The authority cited for that proposition is a case concerning a franchise agreement, negotiated by sophisticated parties, that contained an invalid term which the court severed.

The present situation is distinguishable. The issue here is not the legality of a particular provision of a contract negotiated by sophisticated parties, but whether one party used its superior bargaining power to impose one-sided terms on the other party. "Aside from merely availing itself of the cost-saving benefits of arbitration, [defendant] has sought to advantage itself substantively by tilting the playing field." Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778, 787 (9th Cir. 2002).[5]

In LeLouis, Magistrate Judge Jelderks declined the employer's invitation to salvage the arbitration agreement by excising or rewriting the most onerous provisions:

---

[5] Plaintiff challenges other provisions in the arbitration agreement. In resolving some issues, the R&R relied on concessions by defense counsel regarding what rights Plaintiff will have, and cited a decision that relied on a concession by counsel. Post hoc concessions by counsel are immaterial in this circumstance, because the fairness of the agreement is evaluated as of the time of formation. See LeLouis, 230 F. Supp. 2d at 1224-25; O'Melveny & Myers, 485 F.3d at 1079 (employer's concession cannot save unconscionable arbitration agreement by effectively rewriting it).

> [I]f I were to accept defendants' proposal, employers would have no incentive to ensure that a coerced arbitration agreement is fair to both sides. Instead, the employer could write a one-sided agreement that favors the employer, and then make the bare minimum modifications necessary to obtain the court's approval. Cf. Armendariz, 24 Cal. 4th at 124, n. 13, 99 Cal. Rptr. 2d 745, 6 P.3d at 697, n. 13 (employer will not be deterred from inserting illegal clauses in arbitration agreements if the worst that can happen is that the court will strike the offending clause after the employee has litigated the matter).

LeLouis, 230 F. Supp. 2d at 1225.

I have invoked similar reasoning in the context of a non-compete agreement imposed by an employer:

> The better approach is to void unreasonable agreements. See LeLouis v. Western Directory Co., 230 F. Supp. 2d 1214, 1224-25 (D. Or. 2001). If employers know that overreaching may result in the agreement being void, they will make sure, in drafting the agreement, that the terms are fair to both sides.

Konecranes, Inc. v. Sinclair, 340 F. Supp. 2d 1126, 1131 (D. Or. 2004). See also Vasquez-Lopez, 210 Or. App. at 577, n. 7 ("curing unconscionable contracts by severing the unconscionable provisions provides those who draft such contracts no disincentive to including such provisions in the first instance").

Voiding the arbitration agreement still leaves in place the underlying employment contract between the parties. Employment, not arbitration, was the primary object of their relationship.

/ / / /

/ / / /

13 - OPINION AND ORDER

## **Conclusion**

Miller's Motion (# 17) to Remand to State Court is denied. To the extent the state court actually dismissed his action for failure to prosecute, the Complaint is reinstated, thus allowing this federal action to proceed. The Magistrate Judge's Report & Recommendation (# 13) are adopted in part. Defendant's Motion (# 3) to Compel Arbitration is denied.

IT IS SO ORDERED.

DATED this 21st day of July, 2008.

/s/ Owen M. Panner
_____
Owen M. Panner
United States District Judge